Good morning, Your Honors. Good morning. I'm Paul Steiner. I represent Carey Daly, the appellant. And I would like to reserve two minutes or whatever may be left if I don't use my full time. Your Honors, I believe that, well, there is a single core issue really here involved. It's a statute of limitations. And on summary judgment, the entire case in the district court was dismissed based on the statute of limitations finding. I believe there are basically two issues for the oral argument, but the core issue is the question of the statute of limitations. And we believe that the main issue is whether or not the district court properly used the documents that were submitted at summary judgment to determine when the statute of limitations commenced. And we believe it did not. We believe the error is that the court saw that an earlier notice to shareholders, a 2004 notice to shareholders, which contained a notification that there was a license with an option to be exercised some five years later to purchase the brand, was essentially the same or a continuation of the same of a notice that came out two years later in 2006. And we think that the 2006 notice to shareholders, which announces a sale of the brand to the same party, Luxco, is really the commencement of a new and different set of facts, because it's for the first time we have a transfer of the assets of the corporation. There's never been a transfer before that. Roberts. When you allege conversion, what are you alleging we have a conversion of? Are we talking about conversion of his initial investment? Are we talking about conversion of the corporation's assets? Or are we mushing them both together? Well, we actually allege that. Conversion targeting. What was converted? It's a little less distinct, I think, than either of those two aspects, Your Honor. What really was converted were the proceeds of the sale of the asset. The proceeds of the sale of what asset? We have the sale of the brand. When Pearl sells the brand to Luxco, there is a million and a half plus dollars received and royalties that come in thereafter. And it's really based upon the special standing or the special status of Mr. Daley. He's a preferred shareholder, not a regular common shareholder. He has a preferred shareholder status under a subscription agreement, which gives him certain rights in proceeds upon liquidation. And that is the most tangible converted asset. There are probably others. And, frankly, it converts his interest, his investment interest, because he no longer has the expectation of the ability to earn that the investment has. But it's really the money. So you would say that if a corporate asset is converted, a shareholder may sue directly without asking the corporation to sue to get its assets back. A shareholder can sue directly to avenge the corporate wrong. Is that what you're saying? No, Your Honor. What are you saying? A common shareholder could not do that. I believe that would be a derivative action. But I believe a preferred shareholder who has certain status under a subscription agreement can do it in his own name. And the authority for that is? I cannot cite a case for you at this point. Okay. Okay. Thank you. But I can cite the Corporation's Code of California, and I should be able to cite a section, and I can't. Okay. I do want to point out a mischaracterization, I believe, that occurs in Appelli's opposition brief, and that's on page 7 at the top, where they characterize this sale that takes place in 2006 as merely an early exercise of the option that 2004 knows. It is not that. And we can see that it is not by looking specifically at the notice itself, which is Exhibit 79 on page 77 of the record in Volume 2, where it says, I am very pleased to report that effective June 1, 2006, the company was successful in negotiating a new agreement with Luxco that resulted in an aggregate cash payment of $1,522,308. It's a new agreement. It's an absolutely totally separate and apart and has an entirely separate and distinct effect from what had happened in 2004. And I believe that the district court was using the 2004 document as saying that that was at least the latest time when Mr. Daley should have, when his causes of action accrued. At that particular time, I think the court misapplied the law when it essentially said, and we document this, I believe, on page 14 of our brief, when it essentially took and said that it's a continuation of what occurred in 2004. And so we believe that there is a separate, distinct, new harm that accrues. And it is, frankly, the first time that we have harm based upon the fact of the loss of the asset. It never has been lost before. There were other harms, to be sure, and Mr. Daley had plenty of things that he complained about, but those were contractual. Those were things that he did and thought he had been promised when he made his investment. We're not complaining about that. Those are long gone. We acknowledge that. I want to go back to October of 2002, when he was told that Pearl never planned on going public. And why is it that his State law claims didn't begin to accrue then? Well, State law claims on a particular representation. He claimed that he was told and part of the ---- Didn't he have a duty to investigate? Sure. And he attempted to, and as we've established during the course of the summary judgment, he was shut out from getting his information. They would not give him particular access to the corporate records. But I also don't think that the harm that was involved there with regard to their promise, if they made it, to go public, is at all the same as one where they decide to sell the property, because they've maintained. Right. They've maintained. We never promised to go public. It was always we wanted to target ourself and market ourselves as a takeover or as a sale object. They maintain that later. But I don't think that one is the same as the other. The harms are entirely different. You're at 1 minute 58 seconds. Left? Yes, left. I'd like to reserve then. Thank you. We'll please the Court. Eric Shaw. I'm representing all the parties here today. It's consolidated. The appellant's brief cites no authority for his fundamental proposition of law, that the accrual of his cause of action is delayed until he suffers what he calls his penultimate injury. Yet the record is replete that he complained from as early as 2001, actually, that the corporation was being looted, that it was being raped and pillaged by these corporations. That shows he had knowledge that he was not getting what he said he was getting from this corporation, that the proceeds of the corporation, the dividends are being diverted to other people. That is his allegation in 2004. That is the commencement of the statute of limitations. He has knowledge of fraudulent conduct, allegedly, and he has knowledge that he's incurred some injury. The fact that later events may mitigate that injury does not delay the onset of the statute of limitations. That is made clear in the Volk case, a case relied upon by the district court correctly and a case ignored entirely in the appellant's brief. He mentions Volk only for an unremarkable proposition, well known, that the State statute of limitations controls State causes of action, clearly. Can I ask you one question? Sure. The opposing counsel says that, well, he had preferred class A, preferred stock, that he could convert into something. Do you know what the something is? Convertible into common shares, Your Honor. That's what usually it is. So he could have converted it into common stock. Correct. Okay. Thank you. Since he had some knowledge of injury, he had to commence some investigation. He had to commence his lawsuit. In fact, he brags in his letters that attorneys have told him that he should file a lawsuit back in 2004, but he continues to sit on his rights. This appellant doesn't even address here his State law claims, really, for concealment. It is unclear entirely what is concealed. The transaction in 2006 is not concealed, notice of that given. In any event, if the concealment cause of action is triggered in 2006, what is his conduct in reliance upon concealment? The only conduct that we have in this case by the appellant is the investment in outstanding shares, all of which is completed by 2001. So the only concealments that could have prompted that conduct are events which occurred prior to 2001. Therefore, there has to be the original misrepresentations, which he's sort of trying to walk away from here. They allege, I think, that the company refused to issue the preferred stock certificates to Mr. Daley. Is that true? No. Did it issue stock certificates to him? Yes. When? Approximately 2001, I believe. There was confusion about where they were mailed. It appears the stock certificates were locked in the mail. The copies of the stock certificates were produced in discovery. Thank you. I don't believe they're part of the record, however. Okay. I'll cross it out. With respect to the conversion cause of action, it is totally unclear what he's alleging is converted. If he's alleging that corporate assets were diverted to improper people, that is a classic derivative action. There is no exception for preferred shareholders to seek. He may have an action for money from the corporation, but he doesn't have an action for derivative action, which is on behalf of all shareholders in common. He doesn't want to frame a derivative action because he's such a small percentage of all the outstanding preferred shares that were he to do so, he would have very little net recovery. So he's attempting, as many shareholders do, to claim an individual action when it would have been a derivative action. Even his RICO claim is technically a derivative action here because it assesses harm to the corporation. So on balance, it just does not seem that he has alleged any error on the part of the district court. I have nothing further unless you have additional questions. It appears not. All right. Thank you. Thank you, Your Honors. Thank you, counsel. Mr. Soto. Thank you, Your Honors. If I might refer to the excerpt of record on appeal, I would draw the Court's attention to page 267 of that record where the subscription agreement talks about liquidation rights of a preferred shareholder, which are different from what a common shareholder would be. With regard to the derivative action aspect, first, I think I've addressed that in my original remarks as to how we approached it. But at the same time, I don't think we would be foreclosed, should this Court allow us to get back to court, to even bring a derivative action at this late date because it's the same parties, the same facts, and that there is probably nothing that stops it from becoming a derivative action should we decide to go that way. I don't think we need to do so, however. Thirdly, with regard to concealment, Judge Fernandez asked about the share certificates. There was a dispute, Your Honor. Mr. Bailey never received the certificates. They may have been issued. They may have been sent in the mail. They may have been lost. He repeatedly asked for them. He never got them, just to clarify the facts, at least as I understand them. Are there any other questions? It appears not. Thank you, counsel. Thank you. Thank you to both counsel. The case, as argued, is submitted for decision by the Court.
judges: Wells, Fernandez, Rawlinson